IN THE SUPREME COURT OF TENNESSEE
AT JACKSON

## STATE OF TENNESSEE v. FARRIS GENNER MORRIS, JR.

### An Appeal from the Criminal Court for Madison County
### No. 94-1481      Franklin Murchison, Judge

---

### No. W1998-00679-SC-DDT-DD - Decided July 10, 2000

---

## FOR PUBLICATION

A jury convicted the defendant of two counts of premeditated first degree murder and one count of aggravated rape. The jury imposed the death penalty for one of the first degree murders after finding that evidence of two aggravating circumstances – that the murder was especially heinous, atrocious or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death and that the murder was committed in the course of a first degree murder, rape, burglary or kidnapping – outweighed mitigating evidence beyond a reasonable doubt. The jury imposed life without parole for the other first degree murder after finding that evidence of two aggravating circumstances – that the defendant knowingly created a risk of death to two or more persons other the victim murdered during the act of murder and that the murder was committed in the course of a first degree murder, rape, burglary or kidnapping – did not outweigh mitigating evidence beyond a reasonable doubt. The trial court imposed a 25-year sentence for aggravated rape to run consecutively to the sentence of life without parole. The Court of Criminal Appeals affirmed the convictions and the sentences. We hold that the evidence was sufficient to support the convictions, that the defendant is not entitled to relief based on the constitutionality of death by electrocution, and that the evidence was sufficient to support the jury's determination that evidence of two aggravating circumstances outweighed mitigating evidence beyond a reasonable doubt. We also hold that the death sentence is not arbitrary, excessive or disproportionate as applied in this case.

**Direct Appeal; Judgment of the Court of Criminal Appeals Affirmed**

ANDERSON, C. J., delivered the opinion of the court, in which BIRCH, HOLDER AND BARKER, J.J., joined. DROWOTA, J., not participating.

George Morton Googe, District Public Defender, Jackson, Tennessee, (On Appeal and At Trial), and Daniel J. Taylor, Assistant Public Defender, and Jesse H. Ford, III, Jackson, Tennessee, (At Trial), for the appellant, Farris Genner Morris, Jr.

Paul G. Summers, Attorney General & Reporter and Michael E. Moore, Solicitor General and Elizabeth T. Ryan, Assistant Attorney General, Nashville, Tennessee (On Appeal), and James G. (Jerry) Woodall, District Attorney General, and Al Earls, Assistant District Attorney General, Jackson, Tennessee (At Trial), for the appellee, State of Tennessee.

**OPINION**

The defendant, Farris Genner Morris, Jr., was convicted of two counts of premeditated first degree murder and one count of aggravated rape. The jury imposed the death penalty for the premeditated first degree murder of Erica Hurd after finding that evidence of two aggravating circumstances, i.e., the murder was especially heinous, atrocious or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death and the murder was committed in the course of any first degree murder, rape, burglary or kidnapping,[1] outweighed evidence of mitigating circumstances beyond a reasonable doubt. The jury imposed life without parole for the premeditated first degree murder of Charles Ragland after finding that evidence of two aggravating circumstances, i.e., the defendant knowingly created a risk of death to two or more persons other than the victim during the act of murder and the murder was committed in the course of any first degree murder, rape, burglary or kidnapping,[2] did not outweigh evidence of mitigating circumstances beyond a reasonable doubt. The trial court imposed a 25-year sentence for the aggravated rape of Angela Ragland, to be served consecutively to the sentence of life without parole.

After the Court of Criminal Appeals affirmed the convictions and the sentences imposed, the case was docketed in this Court for automatic review.[3] We reviewed the Court of Criminal Appeals' decision, the record, and the applicable law, and entered an order specifying the following issues for argument: whether the evidence was sufficient to support the convictions for premeditated first degree murder; whether electrocution constitutes cruel and unusual punishment; whether the evidence was sufficient to support the aggravating circumstances and the jury's finding that the evidence of the aggravating circumstances outweighed the mitigating evidence beyond a reasonable doubt with regard to the first degree murder of Erica Hurd; and whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases.

We conclude that the evidence was sufficient to support the verdicts of premeditated first degree murder and that the defendant is not entitled to relief on the issue of whether electrocution is cruel and unusual punishment. We further conclude that the evidence was sufficient to support

---

[1]    Tenn. Code Ann. § 39-13-204(i)(5) and (7)(1991 and Supp. 1994).

[2]    Tenn. Code Ann. § 39-13-204(i)(3) and (7)(1991 and Supp. 1994).

[3]    Tenn. Code Ann. § 39-13-206(a)(1)(1997)("The affirmance of the conviction and the sentence of death shall be automatically reviewed by the Tennessee supreme court.").

-2-

the two aggravating circumstances with regard to the murder of Erica Hurd, as well as the jury's finding that the evidence of these aggravating circumstances outweighed mitigating evidence beyond a reasonable doubt. Finally, we hold that the sentence of death is not arbitrary, excessive or disproportionate to the sentence imposed in cases involving similar crimes and defendants. Therefore, we affirm the Court of Criminal Appeals' judgment.

## BACKGROUND
### Guilt Phase

Charles and Angela Ragland lived in a duplex residence in Jackson, Tennessee. The defendant, Farris Genner Morris, lived with his wife in the adjoining residence.

In the early morning hours of September 17, 1994, Angela Ragland arrived at her home along with her 15-year-old cousin, Erica Hurd. Charles Ragland was awake in the bedroom with the light on. Shortly after arriving, Erica went outside to retrieve something from the car. When Erica came back into the house, Angela heard a scream and saw that Morris was holding a shotgun to Erica's head.

Morris pushed Erica onto the bed in the Raglands' bedroom and asked Charles "where the dope was." Charles Ragland replied that he "didn't have any" and asked Morris if he wanted money.[4] After Morris responded that he would "find it himself," Morris fired a shot into the floor and ordered Charles Ragland to get on the floor. He placed a pillow on Ragland's head and shot him one time in the head.

Morris ordered Erica to get into a closet by threatening to "blow her head off." He forced Angela into another bedroom, tied her wrists and ankles, and covered the window with a mattress so that "nobody could see if they walked by." Morris then retrieved Erica from the closet. Angela Ragland testified that she heard Erica pleading for Morris not to kill her and that she heard Morris say "shut up." She testified that she heard Erica screaming and gasping for breath, and then silence.

Morris returned to the bedroom and, still holding the shotgun, forced Angela Ragland to bathe him. Afterward he ordered Angela to put on a negligee and make him something to eat, which she did. Morris then forced Angela to have sexual intercourse with him "three or four times" and to perform oral sex upon him. Morris told her that he had once been "accused of raping someone and . . . if he was going to jail, he was going to go to jail for doing something." He told Angela that "society made him the way he was" and "was the reason that he was doing what he did."

Around 6:30 a.m., Morris heard his wife in the adjoining residence and told Angela that he would let her go. He instructed her to tell police that she found the bodies of her husband and cousin when she arrived home that morning. Morris used a cloth to wipe off objects he had touched and

---

[4]     Angela Ragland testified that her husband did not sell or use drugs.

-3-

he warned Angela not to go to the police. Angela fled to the house of a nearby friend, who drove her to the police station. The police found Morris at his home shortly thereafter and arrested him.

The bodies of Charles Ragland and Erica Hurd were later discovered in the Ragland residence. Charles Ragland had been shot in the head. Erica Hurd had been beaten and stabbed repeatedly. A blood-stained steak knife was found behind a couch and a large butcher knife with traces of blood was found in a chair in the living room. Angela Ragland testified that neither knife belonged to her or her husband. A 12-gauge pistol grip, pump action shotgun was later found underneath Morris's dresser drawer.

After being advised of and waiving his constitutional rights, Morris gave a statement to Officers Patrick Willis and James Golden of the Jackson Police Department.[5] Morris said that on the day of the offense he had purchased and smoked $250 worth of cocaine. He admitted that he had an exchange with Charles Ragland at 1:00 a.m., just a few hours prior to the murders, in which he asked Ragland to sell him drugs and, when Ragland declined, told Ragland that "he was going to regret disrespecting me." Morris admitted that he went to his house, got his shotgun, loaded two shells into the shotgun, and waited for Ragland's wife, Angela, to get home. Morris admitted that he entered the Ragland's residence with the shotgun and demanded that Charles Ragland sell him drugs. He admitted that after Ragland said he didn't have any drugs, he fired a shot into the floor, put a pillow over the barrel of the gun and shot him in the head. Morris admitted that he put Erica Hurd in a closet and tied up Angela Ragland. Morris told officers that he intended only to tie up Erica Hurd but that he stabbed her because she acted crazy and they struggled over a knife. Morris admitted he had sexual intercourse and oral sex with Angela Ragland.

Dr. O.C. Smith, the Deputy Chief Medical Examiner for West Tennessee, testified that Charles Ragland died from a shotgun wound to the head. Dr. Smith testified that he found evidence of an "intermediate target" between the weapon and Ragland's head, but that Ragland's death was "instantaneous because the brain [was] destroyed."

Dr. Smith testified that Erica Hurd had died as a result of multiple injuries including, stab wounds, blunt trauma to the head, skull fractures, and damage to the brain. Dr. Smith found that there were 37 stab wounds, 23 of which were sustained prior to death and 14 of which were post-mortem. Dr. Smith testified that 25 of the stab wounds were to the victim's neck and face and that the force of the stabbings was great enough to cause the knife blades to bend upon striking bone.

The defense theory focused on Morris's use of crack cocaine. In addition to Morris's own statement to police, Russell Morris, the defendant's brother, testified that he saw the defendant smoking crack around 5:15 p.m. on the evening before the murders.

---

[5] The statement in its entirety is contained in the opinion of the Court of Criminal Appeals, which is attached to this opinion as an appendix.

Dr. Robert Parker, a doctor of pharmacology at the University of Tennessee, testified about the effects of crack cocaine use. Parker testified that smoking crack cocaine produces an intense euphoria and symptoms such as excitability, paranoia, mania, and impaired judgment. Parker testified that most users of crack cocaine go on a "cocaine run" or "binge." When users become unable to duplicate the feeling of euphoria from the initial uses of the drug, judgment is further impaired and there is "an increased risk of violent or homicidal behavior." Parker explained that an acute withdrawal or "crash phase" occurs when the drug is not used. It can be marked by depression, exhaustion, paranoia, anxiety, and suicidal thoughts. Parker testified that the evidence of Morris's behavior was "consistent with the ingestion of cocaine."

Dr. William Bernet, medical director of the Psychiatric Hospital at Vanderbilt University, testified that he evaluated Morris based on an interview and a review of various records and documents. Dr. Bernet concluded that due to false accusations of rape prior to these offense, Morris became suicidal and a crack cocaine user. Dr. Bernet stated that the mental stress and use of crack cocaine "affected [Morris's] judgment" and "may have prevented him from forming the intent" to commit the murders of Charles Ragland and Erica Hurd.

The jury convicted Morris of two counts of premeditated first degree murder and one count of aggravated rape.

## Penalty Phase

Dr. O.C. Smith again testified regarding his findings from the autopsy of Erica Hurd, including the blunt trauma, skull fractures, and 37 stab wounds. Dr. Smith said that the wounds would have been painful and that the stab wounds that struck bone would have caused severe pain. Dr. Smith explained that the wounds were "in areas that may be targeted, the face, the head, the chest, the back," and that they showed "sites of selection, as opposed to a random pattern of distribution." Dr. Smith, noting that some of the wounds were severe and others were superficial, testified that it "may imply an element of control . . . or it may imply an element of torment by being very superficial in nature."

Several witnesses testified on behalf of the defendant. Mickey Granger, the defendant's employer, testified that Morris was a good, dependable employee who suffered a "downhill slide" in performance when accused of rape shortly before these offenses. Granger became aware of Morris's drug problem when he found a crude crack pipe fashioned from a soft drink can.

Jack Thomas, a friend of the defendant's, testified that when he visited Morris in prison, Morris admitted his responsibility for the killings but denied that he raped Angela Ragland. According to Thomas, Morris said that he had used a large amount of cocaine on the night of the offenses in an effort to overdose. Several other witnesses, including teachers and prison employees, testified that Morris is a good student, participates in class, and is punctual. Several of the witnesses testified that Morris helps others inmates, studies frequently, and uses reference material from the library. The defendant did not testify.

The jury imposed a death sentence for the first degree murder of Erica Hurd after finding that the evidence of two aggravating circumstances – that the murder was "especially heinous, atrocious or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death," and that the murder was "committed while the defendant was engaged in committing . . . any first degree murder, rape, burglary or kidnapping" – outweighed mitigating evidence beyond a reasonable doubt. See Tenn. Code Ann. § 39-13-204(i)(5) and (7).

The jury imposed a sentence of life without parole for the murder of Charles Ragland after finding that the evidence of two aggravating circumstances – that the defendant "knowingly created a great risk of death to two or more persons other than the victim murdered during the act of murder" and that the murder was committed while the defendant was engaged in committing any "first degree murder, rape, burglary or kidnapping" – did not outweigh mitigating evidence beyond a reasonable doubt. Tenn. Code Ann. § 39-13-204(i)(3) and (7). In a separate sentencing hearing, the trial court imposed a 25-year sentence for the aggravated rape conviction and ordered that it be served consecutively to the sentence of life without parole.

The Court of Criminal Appeals affirmed the convictions and the sentences. The case was then docketed in this Court for automatic review.

## ANALYSIS
### Sufficiency of the Evidence

The defendant argues that there was insufficient evidence of premeditation and deliberation to support the first degree murder convictions. The defense theory at trial was that Morris's use of crack cocaine rendered him incapable of forming the culpable mental states to commit the offenses. The State maintains that the evidence was sufficient to support the convictions.

When evaluating the sufficiency of the evidence, we must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.2d 560 (1979). We are required to afford the prosecution the strongest legitimate view of the evidence in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. E.g., State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997), cert. denied, 523 U.S. 1083, 118 S. Ct. 1536, 140 L. Ed.2d 686 (1998). Questions concerning the credibility of the witnesses, the weight to be given the evidence, and any factual issues raised by the evidence are resolved by the trier of fact. Id.; State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994), cert. denied, 513 U.S. 1086, 115 S. Ct. 743, 130 L. Ed.2d 644 (1995).

At the time these offenses were committed, first degree murder included an "intentional, premeditated and deliberate killing of another." Tenn. Code Ann. § 39-13-202(a)(1)(1991).[6] By

---

[6]     Effective July 1, 1995, the statute was amended to delete the element of deliberation from this definition of first degree murder. Tenn. Code Ann. § 39-13-202(a)(1)(Supp. 1996).

statute, "intentionally" is defined as the "conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-106(a)(18)(1991). A "deliberate" act meant one performed with a cool purpose, and a "premeditated" act was one done "after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-201(b)(1) and (2)(1991).

In Bland, we identified and discussed circumstances that, if established by the proof, may warrant the trier of fact to find or infer premeditation. The circumstances include the use of a deadly weapon upon an unarmed victim, the particular cruelty of a killing, any threats or declarations of intent to kill made by the defendant, proof that the defendant procured a weapon, any preparations to conceal the crime undertaken before the crime is committed, and the defendant's calm demeanor immediately after a killing. Bland, 958 S.W.2d at 660. The element of deliberation, on the other hand, "requires that the killing be done with a cool purpose – in other words, that the killer be free from the passions of the moment." State v. West, 844 S.W.2d 144, 147 (Tenn. 1992).

We agree with the Court of Criminal Appeals' conclusion that the evidence was sufficient to support both first degree murder convictions. The evidence, indeed the defendant's own statement, indicated that Morris confronted Charles Ragland just hours before the offense and warned Ragland that he would "regret disrespecting me." Morris then went to his home, which adjoined the Ragland's, procured a shotgun, loaded it with two shells, and waited for Ragland's wife to arrive home so as to effect his entry into the Ragland's home. Morris abducted Erica Hurd and forced his way into the Ragland's residence at gunpoint.

Once in the home, Morris demanded that Charles Ragland give him "dope" and refused Ragland's offer of money. He fired one shot, forcing Ragland to the floor, and after placing a pillow over Ragland's head, fired one shot into his head from close range. Morris proceeded to put Erica Hurd into a closet and tie Angela Ragland in another room. He covered a window with a mattress. He retrieved Erica from the closet, beat her, and stabbed her 37 times in the face, head, and chest. The medical examiner testified that the wounds were inflicted in a "targeted" fashion that showed "sites of selection." Having killed both Ragland and Hurd, Morris calmly ordered Angela Ragland to bathe him and then fix him something to eat prior to forcing her to engage in sexual intercourse. Before leaving the scene some three hours after the offenses began, Morris tried to wipe off his fingerprints and then hid the shotgun.

Accordingly, the evidence revealed numerous circumstances from which the jury could infer both premeditation and deliberation: the threats against Charles Ragland just prior to offenses; the procurement of a shotgun and ammunition; Morris's lying in wait for an opportunity to enter the victims' home; the use of a deadly weapon on the unarmed Charles Ragland after deliberately covering the victim's head with a pillow; the savage stabbings of Erica Hurd in a severe yet targeted fashion; Morris's calm demeanor in bathing and eating after committing two murders; and Morris's efforts to conceal his fingerprints and hide the murder weapon. Moreover, despite Morris's use of cocaine prior to the offense, his detailed recounting of the offenses in his statement to officers was nearly identical to that of eyewitness Angela Ragland. When viewed under the appropriate standards of appellate review, we conclude that the evidence was legally sufficient to support the jury's verdicts as to both counts of first degree murder.

The defense theory was that Morris was unable to form the culpable mental states of intent and premeditation due to his excessive use of crack cocaine prior to committing the offenses. The trial court allowed evidence of Morris's use of cocaine and properly instructed the jury that a defendant's "voluntary intoxication" could "negate a culpable mental state." See Tenn. Code Ann. § 39-11-503(a)(1991).

The weight to be given the evidence and the determination of whether the voluntary intoxication negated the culpable mental elements were matters for the jury. Given the overwhelming evidence of Morris's intentional, deliberate and premeditated acts, the jury obviously elected to reject the defense theory. Moreover, the defense theory that Morris's use of cocaine rendered him incapable of forming the culpable mental states was refuted by Morris's own confession in which he recounted the offenses in full detail. Accordingly, we find no merit to Morris's contention that his cocaine use rendered the evidence insufficient to support the jury's verdict as a matter of law.

## Electrocution

Throughout these proceedings, the defendant has maintained that electrocution is cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and article I, section 16 of the Tennessee Constitution. Conceding that this issue has been rejected by this Court on numerous occasions,[7] the defendant relies on authority from other states and argues that an evidentiary hearing should be held on such issues as the construction of the electric chair, the manner of its use and maintenance, the possibility of malfunction, and the potential harm and suffering inflicted on those executed through electrocution. The State argues that the issue is no longer ripe for review.

Morris was sentenced to the death penalty in January of 1997. As the State notes, in May of 1998, the Tennessee legislature amended statutory law and allowed a defendant who was sentenced to death before January 1, 1999, to sign a written waiver and elect to be executed by lethal injection. Tenn. Code Ann. 40-23-114(c) (Supp. 1999). The State argues that the issue is not ripe for review because the defendant has not chosen electrocution as the means of death and that, if he does so, any objection to electrocution is waived.

Since the filing of briefs, the legislature has again amended Tenn. Code Ann. 40-23-114(c), lending further support to the State's argument. As amended, the statute now provides for lethal injection as the default manner of execution in all cases in which a defendant has been sentenced to death. 2000 Tenn. Pub. Acts, ch. 614 (enacted March 30, 2000). A defendant may now waive lethal injection and elect electrocution.

---

[7] E.g., State v. Nichols, 877 S.W.2d 722, 737 (Tenn. 1994), cert. denied, 513 U.S. 1114, 115 S. Ct. 909, 130 L. Ed.2d 791 (1995); State v. Black, 815 S.W.2d 166, 179 (Tenn. 1991).

The result of the legislation is this – the defendant is no longer under a penalty of death by electrocution, but rather, death by lethal injection. The issue of whether electrocution is cruel and unusual punishment is no longer properly before the Court. Moreover, the United States Supreme Court has said that a defendant who elects a certain means of death such as electrocution waives his constitutional challenges to the manner of executing the sentence. Steward v. LaGrand, 526 U.S. 115, 119 S. Ct. 1018, 1020, 143 L. Ed.2d 665 (1999).

Accordingly, the defendant is not entitled to relief on this issue.[8]

## Sufficiency of Aggravating Circumstances

In reviewing a sentence of death, we are to determine whether the evidence supports the jury's findings with respect to aggravating circumstances and whether the evidence supports the jury's conclusion that the aggravating circumstances outweighed mitigating factors beyond a reasonable doubt. Tenn. Code Ann. § 39-13-206(c)(1)(1997). We will review each issue in turn.

## Heinous, Atrocious or Cruel

The jury found that the murder of Erica Hurd was "especially heinous, atrocious or cruel in that it involved torture or serious physical injury beyond that necessary to produce death." Tenn. Code Ann. § 39-13-204(i)(5). Morris argues that the evidence was insufficient to support this aggravating circumstance because the State did not establish with certainty whether the victim was alive and conscious when she was stabbed to death.

We have defined "torture" as "the infliction of severe mental or physical pain upon the victim while he or she remains alive and conscious." State v. Williams, 690 S.W.2d 517, 529 (Tenn. 1985); State v. Mann, 959 S.W.2d 503, 511 (Tenn. 1997), cert. denied, 524 U.S. 956, 118 S. Ct. 2376, 141 L. Ed.2d 743 (1998). We have defined "serious physical abuse beyond that necessary to produce death" as follows:

> Because the legislature added the words 'serious physical abuse,' it must be assumed that the legislature intended the words . . . to mean something distinct from 'torture.' The word 'serious' alludes to a matter of degree. The abuse must be physical, as opposed to mental, and it must be 'beyond that' or more than what is 'necessary to produce death.' 'Abuse' is defined as an act that is 'excessive' or which makes 'improper use of a thing,' or which uses a thing 'in a manner contrary to the natural or legal rules for its use.'

State v. Odom, 928 S.W.2d 18, 26 (Tenn. 1996)(quoting Black's Law Dictionary 11 (6th ed. 1990)).

---

[8] We express no opinion on the constitutionality of lethal injection as the defendant did not have the opportunity to raise or litigate that issue in the courts below.

The evidence revealed that Erica Hurd was present when Morris shot Charles Ragland in the head at close range. She was then forced into a closet while Morris tied up Angela Ragland in another room. When Hurd was retrieved from the closet, Angela Ragland testified that she heard the victim pleading for her life, screaming, and gasping for air for fifteen or twenty minutes. The medical examiner testified that the victim suffered blunt trauma to her head that resulted in fracturing of her skull and 37 stab wounds in the face, head, back and chest. The medical examiner testified that 23 of the stab wounds were inflicted while the victim was still alive and that the stab wounds that struck bone would have caused severe pain. According to the medical examiner, the wounds were inflicted in a targeted, selective manner.

The evidence overwhelmingly supports both torture and serious physical injury beyond that necessary to produce death. E.g., State v. Mann, 959 S.W.2d at 511 (victim beaten, strangled and stabbed 11 times); State v. Bush, 942 S.W.2d 489 (Tenn.), cert. denied, 522 U.S. 953, 118 S. Ct. 376, 139 L. Ed.2d 293 (1997)(victim beaten and stabbed 43 times); State v. Smith, 868 S.W.2d 561 (Tenn. 1993), cert. denied, 513 U.S. 960, 115 S. Ct. 417, 130 L. Ed.2d 333 (1994)(victim shot, throat slashed, and stabbed). We therefore conclude that the evidence in this case was sufficient to support the jury's finding that the murder was "especially heinous, atrocious or cruel in it that involved torture or serious physical injury beyond that necessary to produce death."

## Murder Committed During Felony

The jury also found that the murder of Erica Hurd was committed while the defendant "was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after having committed or attempted to commit any first degree murder, rape, burglary or kidnapping." Tenn. Code Ann. § 39-13-207(i)(7)(Supp. 1994).[9] Morris argues that the evidence was insufficient to support this aggravating circumstance because the evidence did not reveal that a felony was committed during the murder of Erica Hurd and the jury made no findings in this regard.

In State v. Terry, 813 S.W.2d 420 (Tenn. 1991), we discussed the application of this aggravating circumstance and the issue of whether the evidence supports a finding that another felony has been committed during a murder:

> Whether the evidence supports a finding that the murder was committed in the course of, during, or while engaged in the commission of another felony . . . generally depends

---

[9] Although this aggravating circumstance lists other felonies as well, the trial court properly charged the jury only on those that were raised by the evidence. See Tenn. Code Ann. § 39-13-303 (1991)(rape); Tenn. Code Ann. § 39-14-402 (1991)(burglary); Tenn. Code Ann. § 39-13-303 (1991)(kidnapping). In State v. Blanton, 975 S.W.2d 269, 281 (Tenn. 1998), cert. denied, 525 U.S. 1180, 119 S. Ct. 1118, 143 L. Ed.2d 113 (1999), we held that the trial court erroneously charged the jury on every felony contained in the aggravating circumstance but that the error was harmless.

on an analysis of the temporal, spatial and motivational relationships between the capital homicide and the collateral felony, as well as on the nature of the felony and the identity of its victim.

Terry, 813 S.W.2d at 423.

In Terry, the defendant had been stealing money from his church congregation over a period of months and then subsequently killed a church employee. We found that the evidence did not support a finding of a "nexus" between the murder and the perpetration of a larceny. In contrast, we observed that the aggravating circumstance had been properly applied in numerous cases where the murder involved the victim of the felony, a witness to the felony, or a police officer attempting to apprehend the defendant after the commission of the felony, and was committed "within close temporal proximity to the commission of the aggravating felony." Id. at 424; see also State v. Hall, 958 S.W.2d 679, 693 (Tenn. 1997), cert. denied, 524 U.S. 941, 118 S. Ct. 2348, 141 L. Ed.2d 718 (1998)(applying Terry and concluding that the aggravating circumstance was applicable because the felony of arson was committed when the defendant murdered the victim by setting fire to the car she occupied).

Moreover, although the analysis must focus upon the relationship between the the felony and the murder, it is not required that the felony be committed either before or contemporaneously with the murder. See State v. Wright, 756 S.W.2d 669, 673 (Tenn. 1988), cert. denied, 488 U.S. 1034, 109 S. Ct. 848, 102 L. Ed.2d 979 (1989)(where evidence showed two killings occurred within short period of time, precise sequence was not dispositive of whether aggravating circumstance was applicable); State v. Jones, 340 S.E.2d 782, 784 (S.C. 1985)(rape of second victim occurred after murder but aggravating circumstance applied because the offenses were a continuous series of acts with no significant lapse of time).

Here, Erica Hurd was a witness to Morris's burglary of the residence as he forced his way in at gunpoint; she was a witness to Morris's murder of Charles Ragland; and she was the victim of a kidnapping when Morris forced her into the closet. Hurd was murdered just moments after the commission of these offenses and just before Morris's aggravated rape of Angela Ragland. All of these offenses were committed at the same place, close in time, and as part of Morris's single criminal spree against these three victims. There was no distinction or separation of these offenses with regard to time, location, motivation or any other factor that would render this aggravating circumstance inapplicable. We therefore conclude that the evidence was sufficient to support the jury's finding.

## Mitigating Factors

We now turn to the question of whether the evidence supported the jury's determination that the two aggravating circumstances outweighed the evidence of mitigating circumstances.

The Eighth and Fourteenth Amendments to the United States Constitution and article I, § 16 of the Tennessee Constitution require that a sentencer in a death penalty case consider mitigating

-11-

evidence. McKoy v. North Carolina, 494 U.S. 433, 442, 110 S. Ct. 1227, 1233, 108 L. Ed.2d 369 (1990); State v. Cauthern, 967 S.W.2d 726, 738 (Tenn.), cert. denied, 525 U.S. 967, 119 S. Ct. 414, 142 L. Ed.2d 336 (1998). The sentencer is permitted to hear evidence about the defendant's background, record and character, as well as any circumstances about the offense that may mitigate against the death penalty and serve as a basis for imposing a lesser sentence. Cauthern, 967 S.W.2d at 738; see also Tenn. Code Ann. § 39-13-204(j) (1997).

Morris argues that the evidence supported numerous mitigating circumstances, including: that his judgment was impaired due to his use of crack cocaine; that he was under extreme mental and emotional disturbance at the time of the crime; that he released Angela Ragland; that he had been a good, dependable employee; that he is a good prisoner and student; and that he accepted responsibility for the crimes. We observe that there was evidence in the record to support several of these mitigating circumstances – indeed, in imposing a sentence of life without parole for the murder of Charles Ragland, it is obvious that the jury gave careful consideration to the mitigating evidence.

Whether mitigating evidence exists and the weight to be given to aggravating and mitigating circumstances are issues for the jury. Bland, 958 S.W.2d at 661. Given the overwhelming strength of the two aggravating circumstances, and the jury's careful consideration of the mitigating evidence, we conclude that the evidence is sufficient to support the jury's finding that the aggravating circumstances outweighed mitigating evidence beyond a reasonable doubt.

## **Proportionality**

Where a defendant has received a death sentence, we must apply a comparative proportionality analysis. Tenn. Code Ann. § 39-13-206(c)(1)(1997). The review is designed to identify aberrant, arbitrary or capricious sentencing by determining whether the death penalty in a given case is "disproportionate to the punishment imposed on others convicted of the same crime." Bland, 958 S.W.2d at 662 (quoting Pulley v. Harris, 465 U.S. 37, 42-43, 104 S. Ct. 871, 875, 79 L.Ed.2d 29 (1984)). If a case is "plainly lacking in circumstances consistent with those in cases where the death penalty has been imposed," then the sentence is disproportionate. Bland, 958 S.W.2d at 668.

We employ the precedent-seeking method of comparative proportionality, by which we compare a case with cases involving similar crimes and similar defendants. Bland, 958 S.W.2d at 667. We consider numerous factors regarding the offense: (1) the means of death; (2) the manner of death; (3) the motivation for the killing; (4) the place of death; (5) the victim's age, physical and psychological condition; (6) the absence or presence of premeditation; (7) the absence or presence of provocation; (8) the absence or presence of justification; and (9) the injury to and effect on other victims.

-12-

We also consider numerous factors about the defendant: (1) prior criminal record; (2) age, race and gender; (3) mental, emotional and physical condition; (4) role in the murder; (5) cooperation with authorities; (6) level of remorse; (7) knowledge of the victim's helplessness; and (8) potential for rehabilitation. Id. at 667. Since no two defendants and no two crimes are precisely alike, our review is not mechanical or based on a rigid formula. Id. at 668. Similarly, that a defendant in a similar case or even the same case has received a sentence less than death does not render a death sentence arbitrary, excessive or disproportionate. State v. Cauthern, 967 S.W.2d at 741.

In this case, the evidence showed that the defendant had a confrontation with one of the victims, Charles Ragland, a short time before the offenses. He procured his shotgun, loaded it with two shells, and waited for an opportunity to gain entry to the Raglands' home. When that opportunity came, Morris forced his way into the home by holding a second victim, 15-year-old Erica Hurd, at gunpoint. He demanded drugs, refused Charles Ragland's offer of money, and shot Ragland in the head at close range. He forced Erica Hurd into a closet and tied up a third victim, Angela Ragland. When he retrieved Hurd from the closet, he beat her and stabbed her 37 times. After killing two unarmed victims in brutal fashion, Morris took a bath, ate a meal, and forced Angela Ragland to engage in sexual intercourse. There was no provocation or justification for Morris's actions, which were at all times intentional, deliberate, and premeditated.

We have found the death penalty neither excessive nor disproportionate in many similar cases involving brutal and gruesome facts that supported the "heinous, atrocious or cruel" aggravating circumstance. E.g., State v. Carter, 988 S.W.2d 145 (Tenn. 1999)(defendant broke into victims' home, shot husband in head, raped wife and shot her in the head); State v. Mann, 959 S.W.2d at 511 (defendant broke into victim's home, beat and raped the victim, and stabbed her 11 times); State v. Bush, 942 S.W.2d at 507 (defendant broke into victim's home, beat the victim and stabbed her 43 times); State v. Cazes, 875 S.W.2d at 259 (defendant broke into victim's home, beat and raped the victim); State v. Jones, 789 S.W.2d 545 (Tenn. 1990)(defendant broke into victim's home, bound, gagged and stabbed victim); State v. West, 767 S.W.2d 387 (Tenn. 1989), cert. denied, 497 U.S. 1010, 110 S. Ct. 3254, 111 L. Ed.2d 764 (1990)(defendant broke into victims' home, raped and stabbed mother and daughter); State v. Cone, 665 S.W.2d 87 (Tenn.), cert. denied, 467 U.S. 1210, 104 S. Ct. 2400, 81 L. Ed.2d 357 (1984)(defendant broke into victims' home and beat victims to death). Moreover, as can be seen, in each of these cases the defendant broke into the victim's residence before committing the murders.

Similarly, the death penalty has been upheld where the jury, as it did in this case, found the felony murder aggravating circumstance based on a kidnapping, rape, murder or burglary. State v. Mann, 959 S.W.2d at 512; State v. Smith, 868 S.W.2d at 583; State v. West, 767 S.W.2d at 397. Finally, like the present case, numerous cases have involved multiple victims in addition to the murder of the victim for whom the death penalty was imposed. State v. Smith, 868 S.W.2d at 583; State v. Payne, 791 S.W.2d 10, 12 (Tenn. 1990); State v. Jones, 789 S.W.2d at 550; State v. Henley, 774 S.W.2d 908, 917 (Tenn. 1989), cert. denied, 497 U.S. 1031, 110 S. Ct. 3291, 111 L. Ed.2d 800 (1990); State v. West, 767 S.W.2d at 397; State v. Cone, 665 S.W.2d at 90.

With regard to the characteristics of the defendant, the record indicated that Morris, age 37, was a good employee, student and prisoner. He contends that he has the potential for rehabilitation, adapting to incarceration, and that he accepted responsibility for his conduct. We observe, however, that Morris did not testify in mitigation and did not express any remorse whatsoever when confessing the offenses to police officers.

The defendant offers two primary reasons in support of his contention that the death sentence is disproportionate: that the evidence did not support the aggravating circumstances; and that the defendant committed the offenses while suffering the effects of crack cocaine. We have already addressed the first argument by having found that the evidence was sufficient to support both aggravating circumstances. With regard to the second argument, we observe that the death penalty has been upheld in numerous cases where the defendant argued that the offense was mitigated by intoxication due to drugs or alcohol. E.g., State v. Payne, 791 S.W.2d at 16; State v. Henley, 774 S.W.2d at 912; State v. O'Guinn, 709 S.W.2d 561 (Tenn.), cert. denied, 479 U.S. 871, 107 S. Ct. 44, 93 L. Ed.2d 169 (1986); State v. Cone, 665 S.W.2d at 90. Moreover, although drug usage or intoxication has been evident in some cases in which the defendant received a sentence less than death, e.g., State v. Gregory, 862 S.W.2d 574 (Tenn. Crim. App. 1993), it does not alone render a death sentence arbitrary, excessive or disproportionate.

Accordingly, having reviewed the nature and circumstance of the offense and the characteristics of this defendant pursuant to the analysis in Bland, we conclude that the death sentence imposed in this case was not arbitrary, excessive, or disproportionate.

## CONCLUSION

We have reviewed the entire record and the arguments raised in this case and we conclude that the evidence was sufficient to support the conviction and that the issues raised by the defendant do not warrant relief. We have also determined that the evidence supported the jury's findings of two aggravating circumstances, that the evidence supported the jury's finding that these aggravating circumstances outweighed mitigating evidence beyond a reasonable doubt, and that the death sentence in this case was not arbitrary, excessive, or disproportionate.

Accordingly, we affirm the decision of the Court of Criminal Appeals and attach hereto as an appendix the relevant portions of that opinion. The sentence of death is affirmed and shall be carried out on the 10th day of October, 2000, unless otherwise ordered by this Court or proper authority. It appearing that the defendant, Ferris Genner Morris, is indigent, the costs of appeal are taxed to the State.