IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2021

**STATE OF TENNESSEE v. JOSEPH SARKOZY**

**Appeal from the Criminal Court for Bradley County**
**No. 19CR261      Sandra Donaghy, Judge**
_____

**No. E2020-01724-CCA-R3-CD**

_____

The Defendant-Appellant, Joseph Sarkozy, appeals the revocation of his probation.  On appeal, the Defendant argues the trial court erred by (1) finding the Defendant violated the terms of his probation when he did not possess the requisite intent for the domestic assault charges used as the basis for the revocation and (2) ordering the Defendant to serve the remainder of his sentence in prison.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and JILL BARTEE AYERS, JJ., joined.

J. Harmon, District Public Defender; John Fortuno, Assistant Public Defender; Brennan M. Wingerter, Assistant Public Defender (on brief), for the Defendant-Appellant, Joseph Amadeus Sarkozy.

Herbert H. Slatery III, Attorney General and Reporter; Edwin A. Groves, Jr., Assistant Attorney General; Stephen D. Crump, District Attorney General; and Krista Oswalt, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background.**  On May 13, 2020, the Defendant was arrested and charged in Bradley County with two counts of domestic assault.  At the time of the Defendant's arrest, he was serving a six-year probationary sentence for other convictions in Bradley County.  As a result of the domestic assault charges, the trial court issued a violation of

probation warrant alleging that the Defendant's conduct violated the following terms of his probation:

> Rule 1: I will obey the laws of the United States, or any State in which I may be, as well as any municipal ordinances.

> Rule 14: I will not engage in any assaultive, abusive, threatening, or intimidating behavior . . . . I will not behave in a manner that poses a threat to others or myself.

**Revocation Hearing.** At the probation revocation hearing, the court first reviewed the Defendant's criminal history. According to the testimony of Beverly Cameron, a probation and parole officer with the Tennessee Department of Correction, the Defendant pled guilty to theft in October 2019, receiving a four-year sentence which was suspended to supervised probation after a period of split confinement. On January 6, 2020, the Defendant pled guilty to charges of theft and auto burglary for which he received a two-year sentence, suspended to supervised probation, running consecutively to his existing four-year sentence. Ten days later, on January 16, 2020, the Defendant was arrested and charged with aggravated domestic assault against his grandmother, resulting in the revocation of his probation. The court reinstated the Defendant's probation in April 2020. Finally, on May 13, 2020, the Defendant was arrested and charged with two counts of domestic assault against his mother, resulting in the revocation hearing that is the subject of this appeal.

The Defendant's mother, Ms. Birchfield, testified at the hearing about the assault, stating that she called the police on May 13, 2020, because her son "had made threats and [] was high." Specifically, the Defendant yelled at her and told her that "[h]e was going to eat [her]." Because the Defendant was within six inches of her when he said this, Ms. Birchfield thought he was going to bite her. Although the Defendant did not physically touch Ms. Birchfield during this encounter, she stated that "he frightened me to the point where I was thinking he's going to hurt me." Ms. Birchfield agreed that the Defendant's behavior was abusive, threatening, and intimidating but insisted that this was not the Defendant's normal behavior. Rather, she attributed his actions to his intoxicated state: "he was . . . high and they say things and do things when they're like that they normally wouldn't do." She testified that her son is addicted to methamphetamine and is "erratic," "talks to people who aren't there," and "does very scary things" when high.

Despite reporting her son to the police, Ms. Birchfield did not want the State to prosecute the Defendant, telling the trial court that she did not think prison would help him. Defense counsel echoed this sentiment, arguing that the Defendant's "mental illness and the fact that he appeared to be on drugs caused him to say and do things he normally would not do." Based on the circumstances, defense counsel asked the court not to impose the Defendant's original sentence because he believed "intense drug treatment and mental health treatment would certainly help this young man" more than a prison sentence. The trial court questioned Ms. Birchfield about the Defendant's prior attempts at drug

rehabilitation and mental health treatment, which consisted of a drug rehabilitation program and a four-day stay at a mental health institution in Chattanooga two years prior. She testified that the Defendant did not seek out these or any other treatments on his own even though she had repeatedly asked him to do so: "he refuses to do that for me."

The State argued that the Defendant violated the terms of his probation by committing domestic assault and engaging in assaultive, abusive, threatening, and intimidating behavior against his mother. The State asked the court to fully revoke his probation and impose the original sentence of confinement because the Defendant had previously violated the terms of his probation.

The trial court found, by a preponderance of the evidence, that the Defendant "assaulted his mother" on May 13, 2020. After finding the terms of probation had been violated, the court fully revoked the Defendant's probation and imposed his original six-year term of imprisonment. The court noted it could have ordered split confinement, but declined to do so because "that's exactly what has happened to him the last two times his case was before me." The trial court recommended the Defendant be evaluated for "mental health or drug addiction, substance abuse programming" as a way to protect the community and give the Defendant "treatment under circumstances when he might not otherwise treat . . . himself."

Following the revocation hearing, the State dismissed the domestic assault charges against the Defendant. The Defendant filed a timely notice of appeal on December 21, 2020.

## ANALYSIS

**I. Probation Revocation.** The Defendant first asserts that the trial court erred by finding that he violated the terms of his probation because the domestic assault charges serving as the basis for the revocation were unsupported by substantial evidence in the record. The State argues that the trial court did not abuse its discretion by revoking the Defendant's probation because the testimony about the Defendant's threatening behavior constituted sufficient evidence that he violated the terms of his probation. We agree with the State.

When a trial court finds that a defendant has violated the terms of his probation by a preponderance of the evidence, the court has the right to revoke probation. Tenn. Code Ann. §§ 40-35-308(c), -310, -311(e)(1); see State v. Hunter, 1 S.W.3d 643, 648 (Tenn. 1999). Probation revocation rests within the sound discretion of the trial court, and this court will not disturb the trial court's ruling absent an abuse of that discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001) (citing State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." Id. (citing Harkins, 811 S.W.2d at 82).

In the instant case, the trial court found that the Defendant's threatening behavior toward his mother constituted an assault, violating Rules 1 and 14 of the terms of his probation. The trial court relied on the definition of assault in Tennessee Code Annotated section 39-13-101(a)(2) for guidance: "A person commits assault who . . . [i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury . . . ." Tenn. Code Ann. § 39-13-101(a)(2). When making its determination, the court noted that Ms. Birchfield testified that she was afraid the Defendant would bite her when he stood close and threatened to eat her. The court also noted that Ms. Birchfield's fear was reasonable because she "believe[d] that [the Defendant] was under the influence of methamphetamine[.]" Based on these facts, the court determined that "the State has put on sufficient proof to support the violation."

However, the Defendant contends that the trial court failed to address the intent element of assault when making its determination and that his "voluntary intoxication and mental health conditions, whether considered individually or together, negated [the] culpable mental state" required for assault. A person acts "intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Id. § 39-11-302(a). A person acts knowingly, the minimum standard for assault, "when the person is aware of the nature of [their] conduct or that the circumstances [surrounding their conduct] exist," or "when the person is aware that [their] conduct is reasonably certain to cause the result." Id. § 39-11-302(b). When a criminal offense requires the defendant to act "intentionally or knowingly," as is the case for assault, evidence of the defendant's mental defect or voluntary intoxication is relevant to negate his culpable mental state. See State v. Hall, 958 S.W.2d 679, 689 (Tenn. 1997) ("evidence that the defendant lacks the capacity, because of mental disease or defect, to form the requisite culpable mental state to commit the offense charged is admissible"); State v. Hatcher, 310 S.W.3d 788, 814 (Tenn. 2010) ("Intoxication, whether voluntary or involuntary, is relevant to the issue of the essential element of the defendant's culpable mental state."); see also Tenn. Code Ann. § 39-11-503(a) & Sentencing Comm'n Cmts. Proof of a mental defect or intoxication alone is not a defense to prosecution for a charged offense. Tenn. Code Ann. §§ 39-11-501(a), -503(a). Rather, there must be evidence that the mental defect or intoxication deprived the accused of the mental capacity to form the culpable mental state and the weight given to such evidence are matters resolved by the fact finder. State v. Morris, 24 S.W.3d 788, 796 (Tenn. 2000).

Despite the Defendant's assertions that he lacked the intent to commit assault, he failed to present evidence at the revocation hearing that either his intoxication or unspecified mental health issues deprived him of the mental capacity to intentionally or knowingly place his mother in fear when he yelled at her and told her that he was going to "eat [her]." The only evidence presented during the hearing regarding the Defendant's mental health was Ms. Birchfield's testimony that the Defendant was "very sick" and that, two years prior to the assault, he had been admitted to a mental institution for four days. Neither of these facts provides evidence of a specific mental defect or show that the

4

Defendant did not possess an awareness that his threat could make his mother fearful of an imminent harmful contact. See Hall, 958 S.W.2d at 690 ("the [] testimony must demonstrate that the defendant's inability to form the requisite culpable mental state was the product of a mental disease or defect, not just a particular emotional state or mental condition. It is the showing of a lack of capacity to form the requisite culpable mental intent that is central to evaluating the admissibility of expert psychiatric testimony on the issue").

Additionally, the testimony about the Defendant's intoxicated state, that he was "talking out of his head," and that he was saying and doing things he would not normally do, is not evidence that the Defendant lacked an awareness of his actions or their possible consequences. See State v. Simpson, ("An intoxicated person might have [a specific] intent while a sober person might not. The determinative question is not whether the accused was intoxicated, but what was his mental capacity."). While the testimonial evidence presented at the hearing showed that the Defendant may have been behaving abnormally because he was high, the Defendant did not present evidence that he lacked an awareness about his actions. See State v. Peden, No. M2015-01252-CCA-R3-CD, 2016 WL 5210765 at *10 (Tenn. Crim. App. Mar. 8, 2016) (although testimony showed the defendant consumed drugs and alcohol on the night of the offense, the defendant "presented no evidence that the intoxication deprived him of the mental capacity necessary to form specific intent"); State v. Jeffery Allen Boston, No. M2010-00919-CCA-R3-CD, 2011 WL 4949932 at *8 (Tenn. Crim. App. Oct. 18, 2011) (concluding that although the evidence showed the defendant drank approximately twelve bottles of beer and shared a marijuana cigarette, the evidence did not show that his intoxication affected his ability to form the culpable mental state required to commit the offenses, including second degree murder).

Furthermore, there is substantial evidence in the record to support a finding that the Defendant violated Rule 14 of the conditions of his probation. Under Rule 14 of the conditions of his probation, the Defendant agreed that he would "not engage in any assaultive, abusive, threatening, or intimidating behavior" and that he would not "behave in a manner that poses a threat to others or [himself]." During the hearing, Ms. Birchfield testified that the Defendant "made threats" and agreed that his behavior on May 13, 2020, was threatening and intimidating. She also agreed that she feared for the Defendant as "being a harm to himself or others" when high. This testimony, which the trial court found to be credible, sufficiently supports the court's conclusion that the Defendant violated his probation by a preponderance of the evidence. Accordingly, the trial court did not abuse its discretion by revoking the Defendant's probation.

**II. Execution of Sentence.** After determining that a defendant "has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right . . . to revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." Tenn. Code Ann. § 40-35-311(e). Once the trial court decides to revoke a defendant's probation, it may (1) order confinement; (2) order the

sentence into execution as initially entered; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the probationary period by up to two years. See State v. Hunter, 1 S.W.3d 643, 648 (Tenn. 1999) (citations omitted); Tenn. Code Ann. §§ 40-35-308(a),(c), -310, -311 (2014). However, the evidence must show that the trial court exercised a conscientious and intelligent judgment and did not act arbitrarily when revoking the defendant's probation and ordering him to serve his sentence in confinement. State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997); State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).

Here, the Defendant argues that, even if the trial court properly found that the Defendant violated his probation, it was improper to order the Defendant to serve the remainder of his sentence in prison because it "does not serve the ends of justice and is not in the best interest of society." The Defendant contends that the court should have ordered "intense drug treatment and mental health treatment" as an alternative to prison, as he requested. However, it is well-established that once the trial court determined that the Defendant had violated the terms of his probation, it was authorized to order him to confinement for the remainder of his sentence. Hunter, 1 S.W.3d at 648. Moreover, this court has repeatedly held that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999), perm. app. denied (Tenn. June 28, 1999).

Finally, the record demonstrates that the trial court exercised a conscientious and intelligent judgment by ordering the Defendant to serve the remainder of his sentence in confinement. The court considered split confinement as an alternative to prison but rejected it based on the Defendant's criminal history and previous probation violations, stating that "the only option that makes any sense under these circumstances is to call his sentence into execution." The trial court further justified its decision, noting that prison was the only "way [it could] protect the public at large, Ms. Birchfield, and . . . to give [the Defendant] treatment under circumstances when he might not otherwise treat that for himself."

The trial court's order of revocation was proper. Accordingly, the Defendant is not entitled to relief.

## CONCLUSION

Based on our review, we affirm the judgment of the trial court.

6

_____

CAMILLE R. MCMULLEN, JUDGE