IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 7, 2001

## STATE OF TENNESSEE v. JERRY LYNN SANDERS

**Appeal from the Circuit Court for Benton County**
**No. 99-CR852     Julian P. Guinn, Judge**

---

**No. W2000-01163-CCA-R3-CD  - Filed May 14, 2001**

---

The Defendant, Jerry Lynn Sanders, appeals from his convictions of aggravated burglary, theft of property less than $500.00, and possession of a Schedule VI controlled substance. He asserts that the evidence presented at trial was insufficient to support his convictions and that the trial court erred by denying his request to admit into evidence a notarized statement wherein the alleged victim stated that he wanted to dismiss the charges in this matter. We find no error; thus, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Vicki Snyder, Camden, Tennessee, for the appellant, Jerry Lynn Sanders.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Robert Radford, District Attorney General; and John Overton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At trial, Officer Morris Rogers of the Benton County Sheriff's Department testified that on March 14, 1999, he responded to a call from Glenn Ronald Martin regarding a theft at Mr. Martin's residence. He arrived at Mr. Martin's residence, which was at 3934 Eva Road in Benton County, about 12:50 a.m. Mr. Martin reported that a microwave, a video cassette recorder, a telephone, and two metal detectors had been taken from his home. There was no sign of forced entry, as Mr. Martin always left his doors unlocked. A bucket of white paint had been knocked over in Mr. Martin's home, and Officer Rogers found a shoe print on an envelope left by someone who had stepped in the paint. The print left the word "Spaulding" on the envelope.

During this initial investigation, the Defendant was developed as a suspect. Officer Rogers immediately went to the Defendant's home, which was a small travel trailer about five to six miles from Mr. Martin's home. The outer, solid door was ajar, but the inner, screen door was closed. Officer Rogers testified that he knocked on the door twice and received no response, so he yelled, "Jerry, Jerry," at which point the Defendant said, "Yeah." Officer Rogers asked whether he and the other officer could come inside, and the Defendant said, "Yes, come on in." As soon as the officers entered, they saw a stack of property that matched the description of the items reported stolen by Mr. Martin. There was no attempt to conceal the items. Officer Rogers said that he advised the Defendant of his Miranda rights and then asked the Defendant where he got the items. The Defendant initially said that he found them in the back of his truck, but then later he said that he bought them from Mr. Martin for sixty dollars. Still later, the Defendant said that he purchased the items for fifty dollars. While at the Defendant's home, Officer Rogers asked to see the Defendant's tennis shoes. The Defendant handed Officer Rogers a pair of tennis shoes that had the word "Spaulding" on the bottom. One shoe also had some residue of white paint on the bottom. The Defendant was then taken into custody.

Officer Rogers testified that it was obvious that both the Defendant and Mr. Martin had been drinking on the night in question. However, he said that he had no trouble communicating with either one of them. Officer Rogers knew both the Defendant and Mr. Martin, and he had seen the Defendant at a bar called the Goal Post around 11:15 or 11:30 the night before.

Later on March 14, 1999, after the Defendant had been released from custody, Officer Rogers received a call regarding vandalism on Flatwoods Road in Benton County. He received a description of the car involved and later stopped the Defendant because the description matched his car. Officer Rogers asked the Defendant to drive to the Sheriff's department, which was approximately one hundred yards away, for questioning regarding a vandalism complaint, and the Defendant complied. Officer Rogers followed the Defendant there. The Defendant was hesitant to get out of his car, but he did exit the vehicle. When the Defendant got out of the car, Officer Rogers saw a plastic bag of a green leafy substance that appeared to be marijuana on the driver's side floorboard of the car. The bag was seized and was sent to the Tennessee Bureau of Investigation Crime Laboratory in Jackson, Tennessee for testing. Lisa Mays, a special agent forensic scientist, testified that the substance in the bag was 5.3 grams of marijuana.

Glen Ronald Martin testified that he had known the Defendant about seven years, and they were friends. On March 13, 1999, the Defendant gave Mr. Martin a ride to the Goal Post Club, and they arrived about 9:30 p.m. The Goal Post Club is only a mile and a half from Mr. Martin's home. Mr. Martin said that around 10:45 p.m., the Defendant left, saying that he would return in about five minutes. He did not return until approximately 11:45, an hour later. The Defendant did not act any differently when he returned, and he gave Mr. Martin a ride home.

When Mr. Martin arrived home, he discovered that several items were missing from his home. He also noticed that a gallon of paint had been spilled in the kitchen and then tracked on the carpet in the living room. The paint had not been spilled when he left for the Goal Post Club. Mr.

Martin went to his mother's house, which was nearby, in order to get a ride to "go get [his] stuff back," but his mother convinced him to call the police instead. Mr. Martin called the police and reported that the items had been stolen from his house.

Mr. Martin testified that the day before, he and the Defendant had discussed the possible sale of the microwave and metal detectors. Mr. Martin had told the Defendant that he would sell the microwave for sixty dollars, but the Defendant did not want to pay that much. He testified that he and the Defendant did not reach an agreement about selling the items, and the Defendant did not have permission to go in his house and take the items. Mr. Martin admitted that he had pawned a television to Lynnwood Turner about five or six years earlier, and he had previously sold the Defendant a metal detector.

Mr. Martin estimated that he drank about four beers while he was at the Goal Post Club, but he said he was not intoxicated. The Defendant had loaned him money that night so that he could buy some beer. Some time after this incident, Mr. Martin accepted some money from the Defendant as restitution for the damage done to the carpet from the paint. Mr. Martin testified that perhaps there was a misunderstanding solely on the Defendant's part regarding whether Mr. Martin was going to sell him the items that were taken.

Officer Chris Rogers, also of the Benton County Sheriff's Department, testified that he accompanied Officer Morris Rogers to both Mr. Martin's residence and the Defendant's residence to investigate a possible burglary. Officer Rogers had also seen the Defendant earlier in the evening. At approximately ten minutes before midnight on March 13, 1999, Officer Rogers saw the vehicle that the Defendant was driving coming from the Eva Road area going toward the Goal Post Club. The Defendant was coming from the direction of both Mr. Martin's home and his home.

Lynnwood Turner testified on the behalf of the defense. He stated that he had known the Defendant for eight years and Mr. Martin for seven years. Mr. Martin had pawned items with Mr. Turner in exchange for money on five or six occasions. Mr. Turner testified that he had last seen Mr. Martin on the Monday prior to trial, and Mr. Martin told him that the situation with the Defendant was a misunderstanding.

## SUFFICIENCY OF THE EVIDENCE

The Defendant first contends that the evidence was insufficient to support his convictions. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102,

105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

A person commits the offense of aggravated burglary when that person enters a habitation without the effective consent of the property owner with the intent to commit a theft. See Tenn. Code Ann. §§ 39-14-402(a), -403. The proof established that the Defendant left Mr. Martin at the Goal Post Club for about an hour. Mr. Martin always left his home unlocked. When Mr. Martin returned from the Goal Post Club, several items had been taken from his home, and there was a foot print left in white paint on the floor. The Defendant was found in his trailer with the items reported stolen from Mr. Martin's home. The Defendant's tennis shoes matched the print found at Mr. Martin's home, and the shoes had white paint on them. When asked about the items, the Defendant first stated that he had found them, and then he said that he had bought them from Mr. Martin. Mr. Martin testified that he never agreed to sell the items to the Defendant, and the Defendant did not have his permission to enter his home when he was not there or to take the items.

From this evidence, we believe that a rational jury could have concluded that the Defendant entered Mr. Martin's home without Mr. Martin's effective consent with the intent to commit a theft. Although Mr. Turner testified that Mr. Martin had stated that the situation was a misunderstanding, and although Mr. Martin agreed with defense counsel that perhaps there could have been a misunderstanding on the Defendant's part, Mr. Martin maintained that he and the Defendant did not reach an agreement as to selling the items. The jury was free to discount the possibility that the Defendant might have "misunderstood" the nature of the conversation regarding the items, especially in light of the Defendant's conflicting statements to the police as to how he acquired the items. Thus, we conclude that the evidence was sufficient to support the aggravated burglary conviction.

Similarly, we find that the evidence was sufficient to support the theft conviction. Theft occurs when a person, "with intent to deprive the owner of property, . . . knowingly obtains or exercises control over the property without the owner's effective consent." Id. § 39-14-103. Here, the evidence established that the Defendant took Mr. Martin's property without Mr. Martin's consent. The Defendant entered Mr. Martin's home while Mr. Martin was not there and took the items to his own home, where they were discovered. The Defendant did not mention to Mr. Martin that he had taken the items, and Mr. Martin said that the Defendant did not have permission to enter

his house or to take the items. Again, the Defendant first said he found the items, and then he said he bought the items. A rational jury could have concluded from this evidence that the Defendant obtained the items without Mr. Martin's consent and with the intent to deprive Mr. Martin of the items. Thus, the evidence supports the Defendant's theft conviction.

Finally, the Defendant was convicted of possession of marijuana, a Schedule VI controlled substance. See id. § 39-17-418(a), -415. Officer Morris Rogers testified that he observed a small, plastic bag of a green leafy substance he believed to be marijuana on the floorboard of the car the Defendant had just exited. Officer Rogers further testified that the Defendant was hesitant to get out of the car, and the marijuana was in plain view. The substance was later positively identified as marijuana. We find that this evidence clearly supports the Defendant's conviction for possession of a controlled substance. This issue has no merit.

## EXCLUSION OF WRITTEN STATEMENT

The Defendant also argues that the trial court erred by excluding a written and notarized statement by Mr. Martin stating that he wanted to drop the aggravated burglary and theft charges against the Defendant. Apparently, the parties had a bench conference during which the trial court ruled that the statement was inadmissible. However, the conference was not transcribed. The Defendant did submit the statement as an exhibit for identification purposes only. In the statement, which was signed by Mr. Martin on December 13, 1999, Mr. Martin stated that he would "drop all charges of theft and damages to personal property pending in court."

The admissibility of evidence is a matter within the sound discretion of the trial court, and this Court will not disturb the trial court's ruling absent a clear showing of an abuse of that discretion. See State v. Cauthern, 967 S.W.2d 726, 743 (Tenn. 1998); State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978). The Defendant has failed to make a clear showing of an abuse of discretion in this case. The Defendant asserts that the evidence should have been admitted because it would have aided the defense theory that Mr. Martin sold or pawned the items to the Defendant. We disagree.

Only relevant evidence is admissible under the Tennessee Rules of Evidence. See Tenn. R. Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. The State presented evidence showing that the Defendant took items from Mr. Martin's house without his permission, and the Defendant's theory was that Mr. Martin sold or pawned the items to the Defendant. The defense presented a witness who testified that Mr. Martin had pawned items to him in the past and that Mr. Martin had stated that the situation with the Defendant was a misunderstanding. Mr. Martin himself testified that perhaps the Defendant misunderstood, but he consistently maintained that he did not sell or pawn the items to the Defendant, and the Defendant did not have his consent to enter his house and take the items. While Mr. Martin's statement that he wanted to "drop the charges" might show that Mr. Martin did not maintain negative feelings towards the Defendant, who was once his friend, we do not believe that the statement makes it more or less probable that the Defendant took the items without Mr.

Martin's consent; thus, the statement is irrelevant to any material fact at issue.  Accordingly, we conclude that it was not an abuse of discretion to exclude the evidence.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE