# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 1, 2002

## STATE OF TENNESSEE v. KEVIN ISLAND

**Appeal from the Criminal Court for Shelby County**
**Nos. 01-00007, 8    Bernie Weinman, Judge**

---

**No. W2002-00092-CCA-R3-CD  -  Filed October 22, 2002**

---

The Defendant, Kevin Island, was convicted by a jury of especially aggravated kidnapping, a class A felony, and aggravated robbery, a class B felony.  After a sentencing hearing, the trial court sentenced the Defendant as a Range II offender to concurrent sentences of twenty-five years and twelve years, respectively, to be served in the Department of Correction.  In this appeal, the Defendant contends that the evidence is not sufficient to sustain his convictions.  We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ALAN E. GLENN, JJ., joined.

Donna Armstard and Garland Ergŭden, Assistant Public Defenders, Memphis, Tennessee, for the appellant, Kevin Island.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Camille McMullen, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On the night of June 20, 2000, Marsha Brown, the victim, was leaving her cousin's apartment in Memphis.  As she was unlocking her car door, she was approached by three men.  All of the men were wearing ski masks, and one of the men was pointing a black gun at the victim's head.  The men demanded that she give them money, and they frisked her and searched through her purse.  The man holding the gun pushed the victim into the passenger side of her car and got in the driver's seat.  The other two men got in the back seat.  The men began rummaging through her car, looking for money.  They continued asking her for money, but she cried and told them she did not have any.  The driver moved the car to the rear of the apartment complex, and one of the men in the back seat got out and

searched the trunk of the car. When the man returned and reported that there was nothing of value in the trunk, the men began to threaten the victim's life, saying, "You're going to die tonight."

After the men continued to demand money, make threats, and search the car, which was parked behind the apartment complex, the men placed the victim in the back seat of her car. They ordered her to remain on her hands and knees with her head pressed against the driver's seat. One of the men drove the car out of the apartment complex. They drove around for a while, then returned to the apartment complex. While they drove, however, the men continued to make threats against the victim, and, at one point, the man sitting in the passenger seat took the gun and held it against her ribs. When they arrived back at the apartment complex, the men stopped the car and told the victim not to move. The three men then got out of the car and fled. After a minute or two, the victim ran to her cousin's apartment, but when no one answered the door, she ran across the street to a convenience store. The clerk at the convenience store summoned police officers who were nearby to aid the victim. The victim testified that the entire episode with the three men lasted between twenty and thirty minutes, and that the men took her pager, a dollar bill from her car's console, and a pack of cigarettes. She was unable to identify any of her assailants.

Officer Mark Rewalt of the Memphis Police Department testified that he obtained latent fingerprints from the doors of the victim's car early on the morning of June 21, 2000. The fingerprints recovered from the victim's car were processed through an automated fingerprint identification system and analyzed by a latent-fingerprint examiner. The fingerprints taken from the vehicle matched those of the Defendant.

Sergeant Jeffery Polk of the Memphis Police Department testified that he investigated the Defendant's involvement in the offense. He testified that the Defendant confessed to the robbery and kidnapping of the victim and his use of a gun during the commission of the crimes. The Defendant explained to Sergeant Polk how he and the other two men pushed the victim into the car, drove to the rear of the apartment complex, searched the car, put her in the back seat, drove around, and ultimately abandoned the car and the victim.

The Defendant argues that the evidence was insufficient to support his convictions for aggravated robbery and especially aggravated kidnapping. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

In his challenge to the sufficiency of the evidence, the Defendant states that his convictions "rest[ ] solely upon a challenged confession and the latent prints which were found on the victim's car."[1] He points out that the victim was unable to identify any of her attackers, no fingerprints were found inside the car, and the car was parked in a public area where a number of people could have touched it.

The Defendant was convicted of especially aggravated kidnapping and aggravated robbery. Especially aggravated kidnapping is false imprisonment accomplished through the use of a deadly weapon.[2] See Tenn. Code Ann. § 39-13-305(a)(1). Aggravated robbery is robbery accomplished through the use of a deadly weapon.[3] See Tenn. Code Ann. § 39-13-402(a)(1).

Here, the victim testified that three men, one of whom was brandishing a gun, approached her and demanded money. They pushed her into her car and searched the car for anything of value. They moved the car to the rear of the apartment complex in order to search the car more thoroughly. All the while the men continued to demand money from the victim and threaten her life. Ultimately they forced her onto her hands and knees in the back seat of the vehicle while they drove around for several minutes. After they abandoned the victim and her car, she realized that they had taken a small amount of cash, her pager, and a pack of cigarettes. The victim's testimony clearly establishes that an especially aggravated kidnapping and an aggravated robbery occurred, but she was unable to identify her attackers.

A crime scene investigator testified that he lifted latent fingerprints from the exterior of the victim's vehicle. After running the prints through an automated fingerprint identification system and

_____

[1]We note that the Defendant does not appeal the admissibility of his statement.

[2]"A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302(a).

[3]"Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a).

visually comparing the prints from the car with samples of the Defendant's fingerprints, the police determined that the prints taken from the car belonged to the Defendant.

However, the most damning evidence against the Defendant is the statement he gave to the police. He admitted his participation in the robbery and kidnapping of the victim. He also stated that he used a black .25 caliber pistol during the episode and that a small amount of cash and a beeper were taken from the victim. When asked to explain the robbery in his own words, the Defendant stated:

> We were looking for somebody to rob, and we saw a girl in a blue or a purple Hyundai. She was just getting in, and I ran up to her with the gun. I told her, "Give me the money," and she didn't have no money. Then I told her to move over on the passenger side. Curtis came to the driver's side with me, and Terrell to the back seat. They were searching the car. Curtis jumped under the wheel in the driver's seat, and I got in the back with Terrell. Curtis drove to the back of Millbranch Apartments. We was steady talking to her, asking where was the money. She said she ain't have none. Then Curtis jumped out of the driver's seat, and went and opened the trunk. He got a bag with some hair products in it and poured it out in the car. We told her to get out and get in the back with Terrell. We told her to lay down, and Terrell had the gun so she couldn't get up. Then Curtis jumped back under the wheel and drove to the Village Square Apartments. We drove around, then drove back to the Millbranch, and we jumped out and ran. She stayed in the car.

The Defendant's statement clearly establishes that he used a gun to steal money and a beeper from the victim. During the course of the robbery, he kept the victim in the car at gunpoint and had her lay down in the back seat while they drove around. Accordingly, the evidence is sufficient to sustain the Defendant's convictions, and this issue is without merit.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE