IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 4, 2003

## STATE OF TENNESSEE v. ASHLEY NESBITT

**Direct Appeal from the Criminal Court for Shelby County**
**No. 95-06195-200    John P. Colton, Jr., Judge**

---

**No. W2001-01663-CCA-R3-CD  - Filed May 2, 2003**

---

The Defendant, Ashley Nesbitt, was convicted by a jury of one count of first degree murder, two counts of attempted first degree murder, and one count of aggravated robbery. The Defendant now appeals as of right, challenging the sufficiency of the evidence. Finding the evidence insufficient to support one of the attempted murder convictions, we reverse and dismiss the Defendant's conviction for the attempted first degree murder of Carl Turner. We affirm the remaining convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part; Reversed in Part; Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

William C. Gosnell and Joshua B. Spickler, Memphis, Tennessee, for the appellant, Ashley Nesbitt.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; William L. Gibbons, District Attorney General; and Dan Woody and Tom Hoover, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On the night of April 11-12, 1995, murder victim Kenneth Allen was visiting Carl Turner at Turner's home, an apartment in Memphis, Tennessee. Also at the apartment were Aaron Cobb, Dedrick Adams, Taurus Cooper, Demetrius Manning, and James Green. The men were playing dice and dominoes in the living room/kitchen area of the apartment. Carl Turner's wife, Barbara Turner, was asleep in one of the bedrooms.

According to Cobb, the men heard a knock at the front door, and the Defendant and Ben Mills walked in. Cobb knew the Defendant and Mills because they had gone to school together. The new arrivals inquired about drugs but were told that there weren't any. Cobb testified that Mills then

got up from where he was sitting and walked to the front door as if to leave. He then spun around, "came up with a gun" and told the men to "Drop it off." Mills shot his gun once into the ceiling. The Defendant then raised his gun, stating "You all heard him." Some of the assembled men dropped their money on the floor. Cobb also dropped his watch on the floor. According to Cobb, the Defendant and Mills then "just started shooting." Cobb testified that he saw both the Defendant and Mills firing their guns and described the guns as revolvers. He testified that those were the only guns he saw and stated that he heard about twelve gunshots. After the shooting began, Cobb fled through the back door of the apartment. Outside, he saw a gray car and an armed driver. Cobb testified that, earlier that day, he had seen Mills in that car.

After the shooting stopped, Cobb returned to the apartment and found Allen, who had been shot but was still alive. He and others helped Allen to the driveway to make it easier for the ambulance to pick him up. Allen subsequently died from a single gunshot wound which penetrated his lung.

Demetrius Manning arrived at Turner's apartment with Cobb. He recognized the Defendant and Mills when they entered the apartment. The Defendant sat down next to him on the couch and Mills sat on the other couch. Mills and the Defendant made inquiries about drugs. When told there weren't any, the robbery commenced. Mills shot once in the air. Manning testified that the Defendant "had the gun on [him] then." When Mills shot in the air, Manning ran down the hall. Subsequently, he heard "a whole lot of shots going off." He ran into a bedroom and prepared to jump out a window but then realized that the shooting had stopped. He returned to the living room and found Allen lying on the floor, shot. He then saw the Defendant coming back into the apartment through the back door with his gun. Manning testified that the Defendant started shooting, and he ran to the bedroom and jumped out the window.

Taurus Cooper testified that he was at Carl Turner's apartment on the night in question. He and some of his friends were there playing dominoes and shooting dice. At about two o'clock in the morning, the Defendant and Mills came in. Both men sat down. After a few minutes, Mills got up and went toward the front door. As he neared the door, he "spinned around with a gun and shot in the ceiling saying, 'You all drop the money off.'" Cooper dropped his money on the floor, and so did Cobb. By this time, the Defendant had also drawn his gun. Cooper testified that both guns were revolvers. Cooper stated, "After we dropped the money on the floor, probably a second or two - five or six seconds later, they went to shooting - started shooting." He testified that both guns were being fired. Cobb ran out the back door, and Cooper hid behind the back door. When the shooting stopped, he and Adams left the apartment; everyone else except Allen had already left. Allen was lying on the floor, shot.

Carl Turner testified that the Defendant and Mills entered the apartment and inquired about drugs while he and his visitors were playing dice and dominoes. When told there weren't any drugs available, Mills walked toward the front door, "made a quick turn and said, 'Everybody put your hands up. Drop it off.'" Mills pulled a pistol, and Turner noticed that the Defendant also had a gun in his hand. When Mills fired the first shot, Turner ran to a bedroom, jumped out a window and ran.

Turner testified that the only guns he saw in his apartment that night were the ones fired by the Defendant and Mills.

Barbara Turner testified that she was asleep on the night in question. She stated that she didn't hear anything until her husband came in and woke her up, telling her to get in the closet. After she was awake, she heard gunshots. Her husband jumped out the bedroom window, and she got in the closet. After the gunfire ceased, she left the closet and headed toward the bathroom. On her way, she looked into the living room and saw a man lying on the floor in a pool of blood. Another man was standing over him, picking up money. She retreated into the bathroom and closed the door. She waited a few minutes and then left the apartment.

Officer Robert G. Moore was on his way to the crime scene when he saw a car matching the description broadcast by the dispatcher in response to the initial call to the police about the shooting. He followed the car until it stopped. At that point, the driver got out and started walking away. Officer Moore told him to stop and lay down and told the other two people remaining in the car to stay inside. A few seconds later, other officers arrived and took the driver and the occupants of the car into custody. Officer Moore continued to the crime scene. There, he found eleven bullet impacts in Carl Turner's apartment, five on the refrigerator. He testified that it appeared that bullets had been fired from each end of the apartment. He found no guns at the scene, and none of the weapons fired at the scene was ever recovered.

Officer Renwick Cowans assisted in taking the suspects into custody. He identified the Defendant at trial as the person who had been lying on the ground at Officer Moore's direction. He testified that Officer Moore pulled the suspects over about fifteen minutes after the original dispatch and that the suspects were about two blocks from the crime scene when they were pulled over. He recovered money from the Defendant's pocket.

The Defendant was indicted for the first degree murder of Allen, on alternative counts of premeditated murder and felony murder. He was also indicted for the attempted first degree premeditated murders of Cobb and Turner and for the aggravated robbery of Cobb. The jury convicted the Defendant on all of these counts, and the trial court merged the two murder convictions into one conviction for first degree murder. The only issue raised on this appeal is the sufficiency of the evidence.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102,

105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

We find the evidence sufficient to support both alternative counts of first degree murder. At the time these crimes were committed, first degree premeditated murder was defined as "[a]n intentional, premeditated and deliberate killing of another." Tenn. Code Ann. § 39-13-202(a)(1) (1991). An intentional killing is committed when it is the accused's conscious objective to cause the death. See id. § 39-11-302(a) (1991). A deliberate killing is one done with a "cool purpose." See id. § 39-13-201(b)(1) (1991). Finally, a premeditated killing is "one done after the exercise of reflection and judgment." Id. § 39-13-201(b)(2) (1991).

> Our supreme court has stated,
> The elements of premeditation and deliberation are questions of fact to be resolved by the jury. These elements may be established by proof of the circumstances surrounding the killing. . . . [T]here are several factors which tend to support the existence of these elements including: the use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; declarations by the defendant of an intent to kill; evidence of procurement of a weapon; preparations before the killing for concealment of the crime; and calmness immediately after the killing.

State v. Carruthers, 35 S.W.3d 516, 558 (Tenn. 2000) (citations omitted).

Here, the Defendant and his accomplice entered Carl Turner's apartment armed with pistols. After a short time of visiting, the Defendant and Mills drew their weapons and demanded that the other men "throw it down." Mills fired a warning shot into the ceiling. After some of the victims placed their money on the floor, the Defendant and Mills opened fire. The victims who testified at trial stated that they saw no guns other than the ones held by the Defendant and Mills; in other words, the Defendant opened fire upon unarmed victims, in the absence of any provocation.[1] The

---

[1]Carl Turner admitted during cross-examination that he had been told by a man nicknamed "Nausea" that Dedrick Adams had had a gun that night. "Nausea" did not testify, however, and Turner maintained that he did not see

(continued...)

Defendant procured his gun prior to entering the apartment, and a "getaway" vehicle was waiting for him behind the apartment. The proof at trial established that the Defendant changed clothes after leaving the apartment. The assailants also disposed of their weapons after leaving the scene of the crime. The Defendant and Mills fired at least eleven shots in the crowded apartment. One of the bullets struck and killed Kenneth Allen. This proof is sufficient for the jury to have properly drawn the conclusion that the Defendant opened fire on his unarmed victims intentionally, deliberately, and with premeditation. Accordingly, the proof is sufficient to support the Defendant's conviction for the first degree premeditated murder of Kenneth Allen, and this issue is therefore without merit.

The jury also convicted the Defendant of the first degree felony murder of Kenneth Allen. In April 1995, first degree felony murder was defined as the "reckless killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, arson, rape, robbery, burglary, theft, kidnapping or aircraft piracy." Tenn. Code Ann. § 39-13-202(a)(2) (1991). The proof at trial established that the Defendant opened fire upon his victims in conjunction with robbing them. Allen was killed as a result. This proof is sufficient to support the Defendant's conviction of first degree felony murder.[2]

The Defendant was also convicted of attempting to commit the first degree premeditated murder of Aaron Cobb. The same proof which establishes the Defendant's guilt of the first degree premeditated murder of Kenneth Allen also establishes his guilt of the attempted first degree premeditated murder of Aaron Cobb. The only difference in the relevant proof is that, fortunately, none of the bullets fired by the Defendant and Mills struck Aaron Cobb. Nevertheless, Mr. Cobb was in the line of fire when the Defendant and Mills began shooting, and the evidence is therefore sufficient to support the jury's verdict on this charge.

We are forced to reach a different conclusion, however, with respect to the Defendant's conviction of the attempted first degree premeditated murder of Carl Turner. The proof at trial established that, prior to opening fire on the victims, the Defendant's accomplice fired a shot into the ceiling. At that point, Carl Turner ran from the room, woke his wife, and jumped from a bedroom window. By the time the Defendant and Mills opened fire at the victims, Carl Turner had left the room and was no longer in danger of being shot by the perpetrators. Accordingly, we must

---

[1](...continued)
Adams with a gun that night.

[2]Although the jury convicted the Defendant of both counts of first degree murder, the trial court merged the verdicts and entered a single judgment of first degree murder. However, the trial court did not specifically note the merger on the judgment form. See State v. Redonna T. Hanna, No. 02C01-9806-CR-00165, 1999 WL 689414, at *8 (Tenn. Crim. App., Jackson, Sept. 7, 1999). Accordingly, we modify the judgment of first degree murder entered by the trial court to show that the Defendant's convictions for premeditated murder and felony murder were merged into one judgment.

reverse the Defendant's conviction for the attempted first degree premeditated murder of Carl Turner, and dismiss that charge.[3]

With respect to the Defendant's conviction of the aggravated robbery of Aaron Cobb, we find the evidence sufficient. Robbery is defined as the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). The robbery is aggravated when it is accomplished with a deadly weapon. See id. § 39-13-402(a)(1). The proof established that the Defendant and Mills drew their handguns on a crowd of people, including Aaron Cobb, and demanded that they "throw it down," meaning their money. Cobb testified that, in response to the Defendant and Mills' demands, he threw his money on the floor. When the Defendant was taken into custody a few minutes later, he had cash in his pocket. This evidence was sufficient from which the jury could properly conclude that the Defendant committed the aggravated robbery of Aaron Cobb. Accordingly, this issue is without merit.

The Defendant's conviction of the attempted first degree premeditated murder of Carl Turner is reversed and the charge is dismissed. In all other respects, we affirm the judgment of the trial court. This case is remanded solely for the purpose of modifying the judgments to reflect that the convictions for premeditated first degree murder and felony-murder are merged into one conviction for premeditated first degree murder.

_____
DAVID H. WELLES, JUDGE

---

[3]We recognize that a panel of this Court, of which the undersigned judge was a member, addressed this same issue in Mills' direct appeal and found the evidence sufficient to support this particular conviction. See State v. Ben Mills, No. W1999-01175-CCA-R3-CD, 2002 WL 925260 (Tenn. Crim. App., Jackson, May 3, 2002). However, on the basis of our review of the record now before this Court, we must disagree with the prior panel on this issue.