IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 24, 2003

## STATE OF TENNESSEE v. JANICE HALL

**Direct Appeal from the Criminal Court for White County**
**No. CR1037      Leon Burns, Jr., Judge**

---

### No. M2002-02320-CCA-R3-CD - July 24, 2003

---

After a bench trial, the Defendant, Janice Hall, was convicted of two counts of vandalism under five hundred dollars, a Class A misdemeanor. The trial judge sentenced her to concurrent terms of eleven months and twenty-nine days, with thirty-five days to serve in confinement. In this direct appeal, the Defendant argues that the evidence was insufficient to support her convictions and that the trial judge erred by ordering her to serve thirty-five days in confinement. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Joe L. Finley, Jr., Cookeville, Tennessee, for the appellant, Janice Hall.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Bill Gibson, District Attorney General; and William M. Locke, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Tammy Blanton testified at the Defendant's trial that her husband and the Defendant had a son together. In December of 2001, Ms. Blanton and her husband were involved in a custody dispute with the Defendant. At about 5:45 p.m. on December 17, 2001, Ms. Blanton and her three daughters went to the home of her mother-in-law, Debbie Young. Ms. Blanton parked her car in the driveway behind Ms. Young's vehicle. Approximately five to eight minutes after she and her daughters arrived at Ms. Young's house, Ms. Blanton "heard a sound that went psst, like that - a big air sound or something." Immediately thereafter, Ms. Blanton saw the Defendant go by the window of the house. Ms. Blanton testified that there was no doubt in her mind that the person she saw outside the window was the Defendant. When Ms. Blanton and Ms. Young went outside, they discovered that

all four tires on Ms. Young's vehicle and all four tires on Ms. Blanton's vehicle were flat. Ms. Blanton testified that "[t]hey had been stabbed and cut." Ms. Blanton stated that she replaced the tires, and they were valued at two-hundred fifty dollars.

On cross-examination, Ms. Blanton stated that, at the time her tires were slashed, it was dark outside. However, the porch light was turned on, and light from Ms. Young's kitchen and living room also shone outside. On redirect, Ms. Blanton stated that she and her husband were supposed to be in court for the custody proceeding on the day after her tires were damaged.

Debbie Young, Ms. Blanton's mother-in-law and grandmother of the Defendant's son, testified that Ms. Blanton and her three daughters came to her house on December 17, 2001. Ms. Blanton parked her car in Ms. Young's driveway, which was lit by a porch light and a street light. Ms. Young stated that Ms. Blanton arrived at approximately 5:45 p.m. About five minutes after Ms. Blanton arrived, Ms. Young was sitting with her back to the window, and Ms. Blanton asked her whether she heard something. Ms. Young was having difficulty hearing that night due to a head cold. Then Ms. Blanton said, "Well, there goes Janice." By the time Ms. Young got outside, she saw a person running through a field. However, it was "pitch black," and Ms. Young could not identify the person who was running through the field. Ms. Young testified that the tires on her car and Ms. Blanton's car had been cut. She estimated the value of her tires to be two-hundred fifty dollars.

Ms. Young also testified that her grandson, the Defendant's son, was in foster care. She, Ms. Blanton and Ms. Blanton's husband were trying to remove him from foster care. The Defendant was upset about that and was attempting to prevent them from obtaining custody of the child. Ms. Young testified that they were scheduled to appear in court on December 18, 2001, regarding the custody dispute.

Brittany Mott, Ms. Blanton's twelve-year-old daughter, testified that she, Ms. Blanton, and her twin sisters went to Ms. Young's house on December 17, 2001. After they had been at Ms. Young's house a short time, she heard "a psst sound." She turned around and saw the Defendant running from Ms. Young's vehicle to the back of the house. Although it was dark outside, Ms. Mott testified that she was positive that the person she saw running was the Defendant because of "her hair and stuff." When she went outside, Ms. Mott noticed that the tires on both vehicles were flat.

Earlene Betterton testified on the Defendant's behalf. She stated that she was working as an R.N. during December of 2001. On December 17, 2001, she got up at about 5:30 in the afternoon in order to be at work at 7:00 p.m. She testified that she had dinner with the Defendant, who was at her house from the time she got up at 5:30 p.m. until she left for work at 6:30 p.m.

On cross-examination, Ms. Betterton stated that she had known the Defendant since the Defendant was twelve years old. She testified that the Defendant referred to her and her husband as "her adopted mom and dad." The Defendant stayed in Ms. Betterton's home for short periods of time, and she was staying there during December of 2001.

Ms. Betterton stated that she remembered the date of December 17, 2001, because it was the day before the Defendant's birthday. She also testified that she became aware on December 18 that the Defendant had been charged with vandalism. She said that she thought the Defendant had learned of the charges when she went to court on December 18 for the custody hearing. When the prosecutor asked whether she could explain how she knew about the charges against the Defendant on December 18 when the Defendant was not arrested until December 27, Ms. Betterton admitted that she did not know when the Defendant was "picked up" by the police.

The Defendant's first argument is that the evidence was not sufficient to support her two convictions for vandalism. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Tennessee Code Annotated section 39-14-408(a) provides that "[a]ny person who knowingly causes damage to or the destruction of any real or personal property of another… knowing that the person does not have the owner's effective consent is guilty of an offense under this section." Ms. Blanton and Ms. Mott testified that, a few minutes after they arrived at Ms. Young's house, they heard a "psst" sound. They both also testified that they saw the Defendant shortly after they heard this sound. Ms. Young also saw someone running away, although she could not identify the person. All three of the State's witnesses testified that, when they went outside, they discovered that the tires on the vehicles belonging to Ms. Blanton and Ms. Young were cut and flat. Ms. Blanton and Ms. Young each had to replace all the tires on their respective vehicles.

The Defendant urges us to find that this evidence is insufficient to support her convictions because of the testimony of Ms. Betterton, who testified that, at the time the offenses were alleged to have occurred, the Defendant was at her house eating dinner. The Defendant characterizes Ms. Betterton as "believable." In contrast, the Defendant points out that the State's witnesses were "very interested" in the outcome of the case. In support of this description, the Defendant emphasizes that the tires that were slashed belonged to Ms. Blanton and Ms. Young, the custody battle between Ms. Blanton and her husband and the Defendant, and the animosity between Ms. Blanton and the Defendant.

Quite simply, the Defendant asks us to declare the evidence insufficient because the defense witness was more credible than the State's witnesses. Obviously, the trial judge, by finding the Defendant guilty of two counts of vandalism, accredited the testimony of the State's witnesses.[1] We reiterate that the trial court, not this Court, resolves all issues regarding the credibility of witnesses. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Based on the testimony of Ms. Blanton, Ms. Young, and Ms. Mott, the trial judge as the trier of fact clearly could have found beyond a reasonable doubt that the Defendant slashed the tires of Ms. Blanton and Ms. Young and thereby committed two acts of vandalism. Therefore, this issue is without merit.

The Defendant's second argument on appeal is that the trial court erred by ordering her to serve thirty-five days in confinement. In support of her argument, she cites Tennessee Code Annotated section 40-35-103(4), which states that "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and Tennessee Code Annotated section 40-35-103(6), which states that "[t]rial judges are encouraged to use alternatives to incarceration that include requirements of reparation, victim compensation and/or community service."

The Defendant was convicted of two counts of vandalism of property valued at under five-hundred dollars. Because acts of vandalism are punished as theft, see Tenn. Code Ann. § 39-14-408(c)(1), the Defendant was convicted of two counts of a Class A misdemeanor, see Tenn. Code

---

[1] The trial court stated,

On the other hand, we have what would appear to be an honest and disinterested party who would provide an alibi that it wasn't Ms. Hall. So it's a situation then of who you believe I guess.

Based upon what Ms. Betterton was indicating, that she was pretty positive, but at the same time a good many of her things are information that comes from Janice Hall, and I'm of the opinion that there is a likelihood that there's some confusion about the date and times in Ms. Betterton's testimony.

The record reflects that the warrant may have been taken on the 18th but it wasn't served till the 27th. It seems to me strange that Ms. Hall would have been in court on the 18th for her child custody matter, whatever that was, and be told about the warrant but not been arrested on the warrant. And so, at any rate, I feel as though the potential confusion in the testimony of Ms. Betterton would justify the Court finding that she is guilty of the offense of vandalism....

-4-

Ann. § 39-14-105(1). Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides in part that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. See Tenn. Code Ann. § 40-35-302(b). Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility. See State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998); State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). One convicted of a misdemeanor, unlike one convicted of a felony, is not entitled to a presumptive sentence. See State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of service of the sentence. See Tenn. Code Ann. § 40-35-302(a). The trial court retains the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. See id. § 40-35-302(e).

Our supreme court has held that, although the better practice is for a trial court to make findings on the record when fixing a percentage of a defendant's sentence to be served in confinement, such findings are not required. See Troutman, 979 S.W.2d at 274. A trial court does need to "consider" the principles of sentencing and enhancement and mitigating factors when sentencing a misdemeanant. See id. In sentencing the Defendant in this case, the trial court did not place on the record its findings concerning the application of enhancement and mitigating factors or the sentencing principles.

The record before us reflects that the Defendant was on pre-trial diversion at the time the instant offenses were committed. Because the Defendant did not testify at trial, and because there is no presentence report, the record contains almost no other information concerning the Defendant. The trial judge ordered her sentence to be served in split-confinement, and the Defendant argues on appeal that the judge should have ordered total probation. We note that the burden of proving suitability for total probation rests with the Defendant. See Tenn. Code Ann. § 40-35-303(b). Based on the record before us, we are unable to conclude that the trial judge erred or abused his discretion in ordering that a portion of the sentence be served in confinement.

The judgments of the trial court are affirmed.

_____
DAVID H. WELLES, JUDGE

-5-